IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CATHY GIRONDI, o/b/o )<br>A.G., a minor, )<br>                    )<br>     Plaintiff, )<br>                    )<br>   v. )<br>                    )<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>                    )<br>     Defendant. )<br>                    ) | Case No: 09 C 3623<br><br>Magistrate Judge Jeffrey Cole |

**MEMORANDUM AND ORDER**

The plaintiff, Cathy Girondi, seeks an award of attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, arguing that the Commissioner's position in denying her application for Disability Insurance Benefits was not substantially justified. She asks for an award of $7,924.06 for 45 hours of work. For the following reasons, the petition is granted.

The EAJA provides that a district court may award attorney's fees where (1) the plaintiff is a "prevailing party"; (2) the government's position was not substantially justified; (3) no "special circumstances make an award unjust"; and (4) the fee application is submitted to the court within 30 days of final judgment and is supported by an itemized statement. 28 U.S.C. § 2412(d)(1)(A), (B); *Golembiewski v. Barnhart*, 382 F.3d 721, 723-24 (7th Cir. 2004). Costs are available under 28 U.S.C. § 2412(a)(1). Here, by virtue of the remand of his case, the plaintiff is the prevailing party. *Shalala v. Schaefer*, 509 U.S. 292, 302 (1993). There are no "special circumstances" alleged. *See Golembiewski*, 382 F.3d at 724; *United States v. Hallmark Const. Co.*, 200 F.3d 1076, 1079 (7th Cir. 2000). The plaintiff's application was timely filed and is supported by an

itemized statement. As to the final point – whether the government's position was substantially justified – the Commissioner bears the burden of proof. *Scarborough v. Principi* 541 U.S. 401, 416 (2004); *Golembiewski*, 382 F.3d at 724. Here, by not arguing the point, the Commissioner has conceded that the government's position was not substantially justified.

The issue, then, is the amount of the award. The plaintiff's request for an award of $7,924.06 covering 45 hours of lawyering is certainly not out of line with awards in Social Security disability cases. *See, e.g.*, *McCristal v. Astrue*, 2012 WL 698365 (N.D.Ill. 2012)($9,034.73 for 47.8 hours); *Walker v. Astrue*, 2012 WL 527527 (N.D.Ill. 2012)($7,684.94 for 43 hours); *Eakin v. Astrue*, 2011 WL 6156766 (N.D.Ill. 2011)($21,733.30); *Anderson v. Astrue*, 2011 WL 5244358 (N.D.Ill. 2011)($8,185.90); *Spaulding vs. Astrue*, 2011 WL 1042580 (N.D.Ill. 2011)($9,817.50 for 56.4 hours); *Jablonski v. Astrue*, 2011 WL 824601 (N.D.Ill. 2011)($9,651.25 for 54.6 hours). Still the government finds fault with the time plaintiff's counsel spent on several tasks, which are described thusly in the government's brief:

> in May, June, September, October, and November 2009, Plaintiff spent a total of four hours on the following tasks: letter to claimant, telephone call from claimant, letter to claimant, receipt and review of pauper's petition from claimant, telephone call to claimant, prepare complaint for district court appeal, prepare documents for district court appeal, file district court appeal online, telephone call to district call, telephone call from district court, receipt and review of district court notice, and receipt and review - summons served. . . . A total of four hours, resulting in $704.l4 in fees spent in initiating this civil action is unreasonable and excessive.

(*Defendant's Response*, at 3). The government adds that "much of the work performed on these tasks could easily have been performed by clerical staff" and that plaintiff's

2

counsel ought to have described the nature of her phone conversations. (*Defendant's Response*, at 4).

> The government also has problems with another slate of billing entries:
>
> Plaintiff's attorney also seeks fees for such tasks as receipt and review of district court correspondence (1/13/10), filing consent to the magistrate judge online (1/15/10), a telephone call from the district court clerk (1/26/10), receiving case reassigned to Magistrate Judge Denlow [sic] (02/03/10), telephone call from claimant (2/25/10), receipt, review and docketing of the district court briefing schedule (7/23/10), faxes and several telephone calls to Assistant Regional Counsel Cynthia Freburg (8/04/10, 09/09/10, 09/10/10, 09/13/10, 9/14/10), telephone calls from and to claimant (9/29/10), letter to claimant (11/18/10), receipt and review of papers from claimant (11/23/10), filing reply brief online (11/24/20), receipt and review of district court order (12/01/10), telephone call from claimant (12/01/10), receipt and review of order district court (12/06/10), and receipt and review of district court action (04/01/11).

(*Defendant's Response*, at 5-6). The government again complains that the entries are not adequately documented or were clerical in nature.

The government's first objection is that counsel took four hours for two letters, two phone calls with a client, two phone calls with the district court, an IFP petition, a complaint, and review of a couple of notices. The government has a point – to an extent. It should not take a half-hour to file a three-page complaint online, and plaintiff offers no explanation for why it did. But a phone call to consult with a client certainly could, and it could also reasonably take fifteen minutes to prepare a letter. It would seem that the government's problem with many of the entries in plaintiff's counsel's billing statement are the product of the practice of billing in quarter-hour increments. That practice is not forbidden and is permissible. *See* the extensive discussion in *Schulten v. Astrue*, 2010 WL 2135474, *2 (N.D.Ill. 2010). *See also Welsh v. Halter*, 2004 WL 1595249, *3 (N.D.Ill. 2004); *Willis v. Barnhart*, 2002 WL 31779907, *3 (N.D.Ill. 2002); *Harper v.*

3

*Massanari*, 2002 WL 1998302, *2 (N.D.Ill.2002); *Johnson, on Behalf of Johnson v. Shalala*, 1994 WL 445090, *6 (N.D.Ill.1994); *Luciano v. Sullivan*, 1990 WL 207375, *1 (N.D.Ill.1990).

The Commissioner has also approved that method of billing. *Schulten*, 2010 WL 2135474, *5; POMS GN 03930.020(B)(3)). The POMS is the Social Security Administration's Programs Operations Management Systems. The POMS is a primary source of information used by Social Security employees to process claims for Social Security benefits. https://secure.ssa.gov/apps10 /poms.nsf/aboutpoms. Under the topic of petitions for fees for services provided in proceedings before the Social Security Administration, it gives examples of what are deemed proper entries in a fee petition, which clearly allow for quarter-hour-increment billing. So, these hours will be allowed, with the exception that the half-hour entry for filing the complaint will be reduced to a quarter hour.

As for entries being inadequate, the POMS undermines this argument as well. It provides examples of acceptable entries such as "Meeting with client" or "Telephonic calls with client and claims representative." POMS GN 03930.020(B)(3). The entries in plaintiff's petition are certainly along these lines. There is no requirement that counsel document the content of telephone calls. One may reasonably assume that the calls relate to the subject matter of the litigation.

The government also suggests that much of the work plaintiff's counsel billed for could be performed by clerical staff. It does not specify which tasks these are, but asks for an across-the-board reduction by half and a second reduction by two-thirds. (*Defendant's Response*, at 4, 6). How the government arrived at these percentages is

4

unexplained, and thus rejected. Moreover, the suggested reductions are unreasonable and utterly unacceptable. They would leave successful counsel with the paltry sum of $1300 as a fee in a case in which the plaintiff prevailed. Moreover, as noted, the requested fee is well within the norm. Judge Posner's rhetorical question regarding a $6625 award: "Can a contested social security case really be litigated to judgment in a district court at a cost in legal fees of so minute an amount?" *Mathews-Sheets v. Astrue*, 653 F.3d 560, 564 (7th Cir. 2011), is a sufficient rebuttal to the government's requested reductions.

Under the Local Rules, the party opposing a fee award must specify the entries it finds excessive. Local Rule 54.3(d)(5). The government hasn't done that in this instance, instead generalizing about certain types of tasks and, even those generalizations do more to undermine the government's position than enhance it. Surely client consultation and correspondence are not clerical tasks, but that is the impression the government's brief gives. (*Defendant's Response*, at 4, 6). As for review of court orders, at some point, attorneys must familiarize themselves with items like briefing schedules. After all, as the Seventh Circuit stressed in *United States v. Golden Elevator, Inc.,* 27 F.3d 301, 302 (7th Cir. 1994), "[i]gnoring deadlines is the surest way to lose a case. Time limits coordinate and expedite a complex process; they pervade the legal system, starting with the statute of limitations. Extended disregard of time limits (even the non-jurisdictional kind) is ruinous. 'Lawyers and litigants who decide that they will play by rules of their own invention will find that the game cannot be won.'"

The government's next argument has more traction. The plaintiff requests an inflation increase of EAJA's statutory hourly rate of $125, *see* 28 U.S.C. §2412(d)(2)(A) to $176.09. Plaintiff submits that she is entitled to an increase in the statutory rate due to

the increased cost of living since the statutory rate was set forth. Relying on United States Department of Labor statistics for the Chicago-Gary-Kenosha area, she argues that the proper rate should be $176.09 per hour. The government does not object to a cost-of-living increase, *see Tchemkou v. Mukasey*, 517 F.3d 506, 512 (7th Cir. 2008)( awarding government's conceded inflationary rate), but argues that it should be geared to when the plaintiff's counsel was doing the work, not when the work was completed. In other words, the government proposes a month-by-month adjustment rather than one adjustment for the entire case.

It's a valid point. Cost-of-living adjustments must be made for the period the work was performed. *Tchemkou*, 517 F.3d at 512; *Marcus v. Shalala*, 17 F.3d 1033, 1040 (7th Cir. 1994). But not on a monthly basis. "[F]ees incurred in a particular year must be indexed using the cost of living multiplier applicable to that year, and so on for each year in which fees were incurred." *Marcus*, 17 F.3d at 1040. Accordingly, the plaintiff shall provide a new petition calculating the inflationary rate for the years the work was performed – 2009-2011. Because this was the law well before she began work on this case, and should have guided her calculations to begin with, she is not entitled to a fee award for the time spent in this recalculation.

One further point on adjustments for inflation. It's an academic point here, given the government's concession that a cost-of-living adjustment is appropriate, but it should be noted that the Seventh Circuit has stated it's not enough to attach an inflation statistic chart to an EAJA petition and ask for a cost-of-living increase:

> The Equal Access to Justice Act does not authorize an award of the prevailing hourly rate, as such, unless it is less than $125 an hour. For that matter it doesn't authorize an award of $125 per hour, or even $125 plus inflation. The $125 rate is a presumptive ceiling; to justify a higher rate

6

> the plaintiff must point to inflation or some other special factor. If he points to inflation he still must show that it actually justifies a higher fee; for while it might seem obvious that a statutory price ceiling should be raised in step with inflation, to do that as a rote matter would produce windfalls in some cases. Inflation affects different markets, and different costs in the same market, in different ways. The framers of the Equal Access to Justice Act were right therefore not to create an *entitlement* to an inflation adjustment; the lawyer seeking such an adjustment must show that inflation has increased the cost of providing adequate legal service to a person seeking relief against the government.

*Mathews-Sheets v. Astrue*, 653 F.3d 560, 563 (7th Cir. 2011)(Posner, J.). And so, a "plaintiff's lawyer [has] to show that without a cost of living increase that would bring the fee award up to $17[6] per hour, a lawyer capable of competently handling the challenge that his client mounted to the denial of social security disability benefits could not be found in the relevant geographical area to handle such a case." *Id.* at 563. In other words, the allowable rate is not the inflation-adjusted rate or even the prevailing market rate, but apparently the least expensive rate charged by a competent attorney in the same area for the same type of work.

The opinion in *Matthews-Sheets* does not explain how a plaintiff would go about proving that no competent lawyer in the area would handle the case for less than the cost-of-living adjusted amount sought by the fee petition. It's hard to prove a negative, and since a lawyer's unsupported affidavit is generally insufficient to establish market rates, *Harper v. City of Chicago Heights,* 223 F.3d 593, 604 (7th Cir.2000), it is certainly not clear whether the attorney seeking a cost of living adjustment could make the case out by himself. Certainly, an affidavit from the applicant that merely posits that no such lawyer exists would be insufficient.

7

Market rates in this area are generally shown by affidavits from a colleague or competitor in the relevant market who is familiar with market rates in the relevant locale. *See Johnson v. GDF, Inc.*, – F.3d –, –, 2012 WL 456484 (7th Cir. 2012)(best evidence of market rate is attorney's actual billing rate; next best evidence is rates of similarly skilled attorneys in the relevant market); *Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 640 (7th Cir. 2011)(presumptive reasonable rate show by what attorney actually charges and prevailing rates in the community); *Gautreaux v. Chicago Housing Authority*, 491 F.3d 649, 659 (7th Cir. 2007)("The market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question.").[1] Presumably, affidavits from those lawyers knowledgeable about market rates attesting to the fact that no competent attorney in the relevant geographic market would take a social security for less than the cost-of-living adjusted amount sought by the plaintiff's counsel ought to suffice – so long as the affiant could explain how he or she came to that conclusion. Without that showing, the affidavit may well not pass muster.

Here, the plaintiff's attorney has filed an affidavit that would seem to fall short of what the court in *Mathews-Sheets* required. She does not rule out the possibility that a competent attorney could not be found in the area for less than $176 per hour. In fact,

---

[1] In Social Security disability benefits cases, the fee the plaintiff's attorney receives is, invariably, an EAJA fee award, so it would be difficult for her to say that the rate she bills is reasonable because it is what their client is willing to pay. *See Cintas Corp. v. Perry,* 517 F.3d 459, 469–70 (7th Cir.2008)("best evidence of whether attorney's fees are reasonable is whether a party has paid them."); *Jeffboat, LLC v. Director, Office of Workers' Compensation Programs*, 553 F.3d 487, 491 (7th Cir. 2009)(Seventh Circuit's "preference [is] for awarding attorneys' fees that are commensurate with what an attorney would otherwise have earned from paying clients.").

8

she says her own rates vary from $50 per hour to $300 per hour.[2] But again, that is not a concern in this instance.

Finally, the plaintiff requests that any fee award be paid directly to her attorney. As the government points out, however, an EAJA fee is payable to the litigant, not her attorney, and is subject to an offset for any pre-existing debt the litigant might owe the United States. *Astrue v. Ratliff*, – U.S. –, –, 130 S.Ct. 2521, 2526-27 (2010). *Mathews-Sheets* interpreted *Ratliff* as suggesting that, "if there is an assignment, the only ground for the district court's insisting on making the award to the plaintiff is that the plaintiff has debts that may be prior to what she owes her lawyer." *Mathews-Sheets*, 653 F.3d at 565. When there is no indication of such a debt, the court cannot "ignore the assignment and order the fee paid to [the plaintiff]." 653 F.3d at 565-66. Here, there is an assignment, but no indication of any debt. Accordingly, the award shall be made directly to plaintiff's counsel.

## CONCLUSION

The plaintiff's petition for an award of fees under EAJA [#32] is GRANTED, with the award covering 44.75 hours and provided that plaintiff files a supplement as to the amount she seeks based on the cost of living increases on a yearly basis as stated in

---

[2] Plaintiff's counsel also avers that, in her experience, "a substantial number of [social security] cases result in a reversal of the final administrative decision or in a remand to the Commissioner . . . ." In other words, based on her personal experience, the prospects for success are good. Yet, she somewhat inconsistently goes on to suggest that the success rate is a factor that inhibits attorneys from taking Social Security cases. (*Plaintiff's Reply*, Ex. C).

this opinion. The award shall then be made to the plaintiff rather than her attorney.

ENTERED: /s/ Jeffrey Cole
UNITED STATES MAGISTRATE JUDGE

DATE: 9/10/12